I respectfully dissent from the majority's decision. The Ohio Supreme Court in State v. Tymcio (1975), 42 Ohio St.2d 39, provided the following guidance in addressing requests by a defendant for court-appointed counsel: We hold that a preliminary determination of indigency can not be permitted to foreclose a redetermination of eligibility for assigned counsel, when, at a subsequent stage of a criminal proceeding, new information concerning the ability or inability of the accused to obtain counsel becomes available. It is then the duty of the trial court to inquire fully into the circumstances impinging upon the defendant's claimed inability to obtain counsel, and his consequent need either for assistance in employing counsel, or for the assistance of assigned counsel. Id. at 45.
The Supreme Court did not clarify whether a "full inquiry" necessitates a separate hearing in every case. Other courts have similarly encountered this issue: The state also charges that there is no requirement that a hearing be held on these matters, that the trial courts can review an applicant's affidavit "alone" and that such a review did, in fact, take place in the cause sub judice. The Ohio Supreme Court has said only that an application for a court appointed attorney invokes a duty in the trial court to "inquire fully" into circumstances impinging on the applicant's inability to obtain counsel. State v. Tymcio (1975), 42 Ohio St.2d 39,45. The court never specified whether a hearing was required to constitute a "full inquiry" into the matter and we decline to address the issue. State v. Brown (Sept. 6, 1994), Hocking App. No. 93CA20, unreported, at 3.
The majority relies on State v. Kirkbride (Sept. 16, 1996), Licking App. No. 96CA26, unreported, in ruling that a hearing is required to review appellant's assertions of indigency. However, I would hold that the facts in the case sub judice are sufficiently distinguishable to negate any reliance on Kirkbride.
Appellant herein submitted a total of three affidavits. In the first affidavit, signed March 17, 1999, appellant listed his monthly household income (his plus his girlfriend's) as $1325, his allowable monthly expenses as $30, and his monthly liabilities as $323. In the next affidavit, signed April 5, 1999, appellant did not indicate that his girlfriend lived in his household, but listed his monthly income as $403, his allowable expenses as $30, and his monthly liabilities as $363.96. In his third and final affidavit, signed on April 6, 1999, appellant again listed his girlfriend as a member of his household, and indicated monthly household income as $1283.36, allowable expenses as $30, and monthly liabilities as $1576.26. However, at no time did he alter his assertion that was entitled to court-appointed counsel. This differs from the conflicting situation faced by the trial court in Kirkbride, which was noted as follows: The court set the matter for jury trial on January 22, 1996, but on December 20, 1995, defense counsel filed a motion to withdraw as counsel, alleging appellant intended to retain other legal counsel. On December 21, appellant filed an affidavit of indigence, alleging she was unable to retain private counsel and requesting counsel be appointed to represent her. The trial court's December 26, 1995, judgment entry denied her motion for appointment of attorney, finding she was not entitled to a court-appointed attorney. On January 3, 1996, the court permitted her previous counsel to withdraw. Id. at 2.
In light of such contradictions as to Ms. Kirkbride's need for representation, we held: Here, the trial court was faced with an unsworn memorandum from Attorney Treneff, alleging appellant would retain another attorney, and a conflicting, sworn affidavit of indigency from appellant. The trial court had a duty to inquire on the record into the circumstances, or change in circumstances, of the appellant before overruling her motion for appointment of counsel and permitting Attorney Treneff to withdraw from the case. Id. at 3.
The situation in the case sub judice does not involve a similar conflicting scenario. Therefore, absent any specific requirement for a hearing in the Rules of Criminal Procedure, I would rely on the presumption of regularity in the trial court's review of the indigency issue. (See, e.g., Hartt v. Munobe (1993), 67 Ohio St.3d 3.) The trial court's independent review of the affidavits of indigency would thereby satisfy the "full inquiry" requirement of Tymcio, and appellant's First Assignment of Error should be overruled. I would further find no merit in appellant's Second Assignment of Error. The transcript contains the following exchange:
 THE COURT: Mr. Kincaid, do you also understand that by signing these forms and changing your pleas today that you're giving up some rights. Among them, you're giving up your right to a trial, a trial by jury, a trial where you cannot be made to testify against yourself or you could, in fact, subpoena people to testify for you and confront the witnesses who testify against you. And by signing these forms and changing your pleas, you give up those rights today. Do you understand that, Mr. Kincaid?
MR. KINCAID: Yes, sir.
 THE COURT: Do you also understand that by signing these forms and changing your pleas today, that you're giving up your right to an attorney, an attorney of your own choosing as well as your right to have one appointed to represent you if you could not afford to hire one. And by signing these forms and changing your pleas today, you give up those rights, too. Do you understand that?
MR. KINCAID: Yeah.
Tr. at 3 — 4.
I would hold that the trial court complied with Crim.R. 44 in regard to waiver of counsel, and would thereby overrule appellant's Second Assignment of Error as well.